**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

          CRIMINAL CASE NO. 05-80810
   Plaintiff,          HON. LAWRENCE P. ZATKOFF

v.

JAMES JACKSON,

   Defendant.
_____/

**SENTENCING OPINION**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on January 25, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

On November 2, 2006, after a jury trial, Defendant Jackson was convicted of conspiracy to possess with intent to distribute and to distribute marijuana. The jury also found the amount of marijuana involved was at least 400 kilograms but less than 700 kilograms. For the reasons set forth below, the Court sentences Jackson to 180 months imprisonment.

**II. OBJECTIONS TO THE PRESENTENCE REPORT**

Jackson has made the following objections to the presentence report.

*1.     Dates of the offense conduct*

The presentence report states that the "offense conduct took place from beginning in or about 1996 and continuing through September 8, 2005. Jackson argues that those dates are not supported by evidence. The Court agrees that the evidence at trial related to Jackson's involvement in the

conspiracy in 2005. Thus, for purposes of sentencing, the Court will consider Jackson's involvement in the conspiracy during 2005.

   *2.   Jackson's role in the conspiracy*

The presentence report states that Jackson delivered the monies needed to purchase marijuana and coordinated the delivery of marijuana. Jackson argues these findings are not supported by evidence. However, during trial the government produced intercepted phone calls between defendant Michael Clark, the leader of the drug organization, and Jackson, and between Clark and third parties, that indicated Jackson did deliver money and coordinate the delivery of marijuana. Thus, the Court overrules this objection.

   *3.   Culpability list*

Jackson objects to being described as a "money handler" in the culpability list. However, the Court finds that, viewed in the context of the list, this description is accurate. As noted above, the evidence indicated that Jackson delivered money and coordinated the delivery of marijuana. Thus, the Court overrules this objection.

   *4.   Spouse abuse*

Jackson objects to the inclusion of a criminal history point for spousal abuse, because Michigan's Spouse Abuse Act allows the conviction to be dismissed upon successful completion of probation. However, Jackson pled guilty to the charge on October 9, 2003. §4A1.2(f) of the sentencing guidelines states that "[a] diversionary disposition resulting from a finding or admission of guilt . . . is counted as a sentence . . . even if a conviction is not formally entered." Thus, the Court overrules this objection.

*5.     Supervised release violation*

The presentence report states Jackson committed the instant offense while on supervised release for a previous conviction for being a felon in possession of a firearm. Jackson argues that his term of supervised release ended on March 6, 2005, and there is no reliable evidence that he joined the conspiracy before that date. However, the government produced two intercepted phone calls between Clark and Jackson from February 15, 2005, that Drug Enforcement Agents testified related to the conspiracy. Thus, the Court overrules this objection.

*6.     Minor participant*

Jackson argues that he was a minor participant in the conspiracy, and notes that the government offered him a plea agreement in which he was considered a minor participant. However, Jackson rejected the plea agreement, and thus it is of no relevance here. The jury found Jackson responsible for between 400 and 700 kilograms of marijuana, and he is not a minor participant in the conspiracy. Thus, the Court overrules this objection.

### III. SENTENCING GUIDELINES

The presentence report assigned Jackson a total offense level of 28 and a criminal history category of V, resulting in a guideline range of 130 to 162 months. However, the report also noted that "[i]n so much as the defendant was convicted at trial, the Court may be in the best position to determine whether or not the defendant obstructed justice by providing false testimony during the course of the trial."

Sentencing guideline §3C1.1 states that:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any

> relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

In *United States v. Dunnigan*, 507 U.S. 87 (1993), the Supreme Court held that an enhancement pursuant to §3C1.1 is constitutional when the defendant has given false testimony at trial. The enhancement is permissible when the defendant has committed perjury, defined as the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94.

The Court finds that Jackson's testimony at trial met this definition. During his testimony, Jackson denied any involvement in the drug conspiracy. Jackson testified that he provided Clark with diesel fuel, and Clark could call him at any time of the day or night to get fuel. Between May 29 and 31, 2005, there were 24 calls between Jackson and Clark. Drug Enforcement Agents also observed white panel vans going to Jackson's house. An Agent later observed Jackson meet a truck, found to contain marijuana, at a gas station around 1:00 in the morning. Jackson got into the cab of the truck with the driver, and then led the truck to another location. Jackson testified that he had no idea that the truck contained marijuana. Jackson testified that the white panel vans were at his house to receive fuel. Jackson also testified the numerous phone calls with Clark were about fuel for the truck, and that he met the truck around 1:00 in the morning to provide it with fuel. Jackson testified that when he arrived the truck had already been fueled. Jackson then testified that he got into the cab of the truck with a complete stranger.

The Court finds that Jackson's testimony about providing fuel to Clark, and the events of May 29 through 31, 2005, was unbelievable. Furthermore, the Court notes that the jury implicitly found Jackson's contention that he did not know what was in the truck to be false. Jackson's testimony regarding the fuel and the truck concerned a material matter in the case, and the Court

finds that it was false.  Because of the detailed nature of the testimony, it could not have been the result of confusion, mistake, or faulty memory.  The Court finds that Jackson had the willful intent to provide false testimony.  Therefore, the Court will apply a two-level enhancement to Jackson's offense level, giving Jackson a total offense level of 30.  The guideline range for a total offense level of 30 and a criminal history category of V is 151 to 188 months.

## IV. SENTENCING FACTORS

When sentencing a defendant, the Court must consider the relevant factors from 18 U.S.C. § 3553, and articulate the reasons for its sentencing decision.  *United States v. McBride,* 434 F.3d 470, 476 (6th Cir. 2006).  The Court will now analyze the relevant factors as they relate to Jackson.

**1.      The Nature and Circumstances of the Offense**

Jackson was involved in a substantial drug organization, involving fifteen charged defendants.  Jackson dealt directly with the head of the organization, Michael Clark, and played a key role in the organization.  On behalf of Clark, Jackson arranged the delivery of a shipment of marijuana from Arizona.  The jury found Jackson responsible for 400 to 700 kilograms of marijuana.

**2.      The History and Characteristics of the Defendant**

In 1981 Jackson was convicted of attempted larceny; no details of the crime are available. In 1989 Jackson was convicted of carrying a concealed weapon and possession of a controlled substance.  He was sentenced to 365 days and five years of probation.  In 1991, Jackson pled guilty to carrying a concealed weapon.  Detroit police had received a report of shots fired, and when they arrived on the scene they observed Jackson and another male exiting a vehicle.  The officers found two firearms in the vehicle.  Jackson was sentenced to 15 months to 5 years.  Jackson also pled guilty to a parole violation, and was sentenced to 18 to 48 months.  In 2000 Jackson was convicted

of being a felon in possession of a firearm. Jackson was found in possession of 3 firearms, which he obtained through false documents. Jackson was sentenced to 24 months and 3 years supervised release. While on supervised release, Jackson pled guilty to domestic violence in 2003. Jackson threw the mother of one of his children onto a sofa and struck her multiple times.

Jackson's criminal history indicates that he poses a substantial risk to the community. The Court is particularly troubled by Jackson's repeated violation of state and federal firearm laws. The Court is also troubled by the fact that Jackson committed additional crimes while on parole and supervised release. The Court notes that Jackson has provided numerous letters from family and friends describing his good character. However, these letters do not change the fact that Jackson has an extremely serious criminal history.

**3.     The Seriousness of the Offense**

As discussed above**,** Jackson was a key member in a drug organization that was responsible for the introduction of a substantial amount of drugs into the community. Thus, Jackson's offense is extremely serious.

**4.     Promote Respect for the Law and Afford Adequate Deterrence to Criminal Conduct**

As discussed above, Jackson has an extensive criminal history, and his prior sentences have failed to promote respect for the law and afford adequate deterrence to criminal conduct. In particular, Jackson committed a third firearm felony after already being convicted and sentenced for two previous firearm felonies. Furthermore, Jackson continued to commit crimes while on parole and supervised release. Jackson began his involvement in the instant drug conspiracy while on supervised release for a firearm felony. Thus, Jackson's prior sentences have failed to deter him from committing further crimes. The Court finds that a sentence near the upper end of the guideline

range is necessary in this case to promote respect for the law and afford adequate deterrence.

**5.     Protect the Public From Further Crimes of the Defendant**

Jackson argues that he does not pose a threat of recidivism because statistics show that recidivism drops dramatically for persons over forty. However, abstract statistics cannot override the fact that Jackson has an extensive history of recidivism, as discussed above. Thus, the Court finds that a sentence near the upper end of the guideline range is necessary to protect the public from further crimes of Jackson.

**6.     Need to avoid unwarranted disparities**

Jackson notes that three other defendants in the case, Kevin Youngblood, Trevyan Agee, and Charles Gadson received sentences of 109 months, 48 months, and 120 months, respectively. Jackson argues that the Court should sentence him to the mandatory minimum, 120 months, to avoid unwarranted disparity with the sentences of those defendants. However, Jackson ignores the fact the Youngblood and Agee pled guilty, cooperated with the government, and testified at trial. As noted in an earlier opinion, the Court was more impressed with Agee's testimony than Youngblood's, but the cooperation of both these defendants was instrumental in causing other defendants to plead guilty. The Sixth Circuit has noted that sentence disparities are reasonable when some defendants plead guilty and cooperate with the government. *United States v. Dexta*, 470 F.3d 612 (6th Cir. 2006). Although Gadson did not cooperate with the government, he did accept a plea bargain. Jackson chose not to accept a plea bargain, and took his chances at trial. He cannot now complain if he receives a greater sentence than a defendant who did accept a plea bargain.

## V. CONCLUSION

Jackson's guideline range is 151 to 188 months. For the reasons set forth above, the Court finds that a sentence in the high end of the range is necessary in this case. Thus, the Court sentences Jackson to 180 months.

IT IS SO ORDERED.

                                              s/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              UNITED STATES DISTRICT JUDGE

Dated: January 25, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 25, 2007.

                                              s/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290